# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

DAVID TOM, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

US SOLAR QUOTES LLC D/B/A US
SOLAR CONNECT,

    Defendant.

CIVIL ACTION FILE NO.
6:24-cv-01647

**FIRST AMENDED
COMPLAINT – CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiff DAVID TOM (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from

telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2.      "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those

2

persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4.      Tom also alleges that Defendant used automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

7.    Plaintiff David Tom is an individual located in the Middle District of Florida, in Brevard County.

8.    Defendant US Solar Quotes LLC d/b/a US Solar Connect, is a St. Petersburg, FL, Pinellas County based solar company that uses illegal telemarketing calls to solicit business in this District.

## JURISDICTION AND VENUE

9.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

10.    This Court has general personal jurisdiction over US Solar because it has its principal place of business in this State.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were sent into this District.

## TCPA BACKGROUND

The Enactment of the TCPA and its Regulations

12.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

13.    Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone

4

subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

14.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The Florida Telephone Solicitations Act

17.    The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

18.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message

5

when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

19.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

20.    Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

21.    Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

22.    Plaintiff Tom is also a "person" as the term is defined by 47 U.S.C. § 153(39).

23.    At no point has the Plaintiff consented to receive telemarketing calls from the Defendant regarding the sale of goods or services, including solar services, prior to receiving the automated calls at issue.

Calls to Plaintiff

24.    Mr. Tom's residential telephone number is (321) XXX-XXXX.

6

25.    That telephone number is a residential telephone line used by Mr. Tom for personal calls and for personal, family, and household use.

26.    The telephone number is a residential number because it is assigned to a telephone exchange service for consumers, not a telephone exchange service for businesses.

27.    That telephone number is not associated with a business.

28.    Mr. Tom registered his residential telephone number on the National Do Not Call Registry for more than a year prior to the calls at issue, and it has remained on the Registry since that time.

29.    Despite that, Mr. Tom received at least 5 automated calls from the caller ID 321-478-4284.

30.    For the avoidance of any doubt, all the automated calls were placed using an automated system, but they did not play pre-recorded messages. Rather, the system used dials calls *en masse*, waits for someone to answer, and only then connects the call to a human being. It will otherwise disconnect the call, including if a voicemail answers or if a human being on Defendant's end is not available for whatever reason.

31.    This technology is known as a "predictive dialer," so named because it predicts when agents may be available and when customers may be available,

7

and varies the automatic dialing rate to accommodate for both ends' traffic patterns.

32.    However, a predictive dialer is only as powerful as its programming, and if the dialer is not properly programmed, or if call volumes surge, such dialers are typically, and illegally, programmed to disconnect, or abandon, the call if it is not able to connect to a human agent in a certain time.

33.    These calls originated using a SHAKEN/SITIR "A" attestation, indicating that the subscriber identity was verified by the telephone carrier and that the calls were not spoofed.

34.    The Plaintiff believes and therefore avers that the subscriber of record for the 321-478-4284 number is the Defendant, or someone the Defendant hired to make calls on its behalf.

35.    The 321-478-4284 number is registered with Commio, a telephone company that provides bulk telephone services, including for automated telemarketing systems like the one alleged to have been used here.

36.    The actual name of the system, as well as how it is programmed, is unknown to the Plaintiff at this time but will be revealed in the course of discovery. As explained above, however, the system bore numerous indicia that it automatically selected and dialed telephone numbers.

8

37. A subpoena on Commio, or any of its downstream providers, will reveal the subscriber of record for the telephone number 321-478-4284, and may also reveal the systems used to place the calls.

38. The first such call from the "A" attest 321-478-4284 number occurred on August 9, 2024, which was missed.

39. The second such call occurred on August 12, 2024, and started with silence. The Plaintiff said "Hello?" multiple times before the call was disconnected on the remote end after 18 seconds.

40. This indicates that an automated system was used to place the calls, as it would be illogical for a human to call someone, stay on the line for 18 seconds, say nothing, and then disconnect the call.

41. Thinking the call may be important, the Plaintiff called the 321-478-4284 number back.

42. When the Plaintiff called the number back, he was connected to individuals who confirmed they were calling from the Defendant and to sell him solar panels.

43. These calls were recorded.

9

44.    These calls are reflected in the Plaintiff's phone logs, a screenshot of which is reproduced below:



45.    During the call at 17:24, the Plaintiff first spoke to an individual named "Yvonne" who confirmed the Plaintiff's information to qualify the Plaintiff for solar.

46.    "Yvonne" then hung up on the Plaintiff when the Plaintiff requested the calls to stop and explicitly revoked any putative consent to receive further calls

by stating, "Don't call me back. Just send me an email. I'm constantly busy with work. Do not call me. Do not text me."

47. Determined to uncover the identity of the caller who was calling him illegally, the Plaintiff called again at 17:29. Plaintiff spoke to "Yvonne" again.

48. "Yvonne" then stated that the Defendant's website was solar-connect.us.

49. This is the Defendant's website.

50. The Plaintiff also confirmed the Defendant's address with "Yvonne."

51. "Yvonne" then transferred the Plaintiff to a "Specialist," "Jacqueline" with "US Solar Connect."

52. "Jacqueline" then further discussed the Defendant's corporate information and license number.

53. "Jacqueline" also provided her direct number of 863-513-8629.

54. This is the direct cellular telephone number for Jacqueline Carol Phillips (nee Vines), residing at 420 Nantahala Ct Casselberry, FL 32707, a 41-year-old Female who works for the Defendant.

55. Thereafter, the Plaintiff received three additional calls, one on August 14, 2024, and two on August 16, 2024 from the same caller ID, and after he had requested the calls to stop.

56.     The Plaintiff also contacted the Defendant in an effort to ascertain the source of the calls and see why he was receiving illegal automated calls.

57.     In response, the Defendant claimed that it did not place any calls to Mr. Tom and that Mr. Tom called the Defendant as an initial matter. This assertion is flatly contradicted by Mr. Tom's own telephone records.

58.     When Mr. Tom brought this to the Defendant's attention, he received the following response:



59.     Under the TCPA, a company like Defendant cannot retroactively obtain consent to make an illegal call that has already taken place.

60.     Under the TCPA, a company like Defendant cannot continue to call persons, like Plaintiff, who explicitly revoked their consent to be contacted. It did

so three times after the Plaintiff called the number back and asked for the calls to stop.

61. Under the TCPA, a company like Defendant cannot call a telephone number on the Do Not Call Registry to attempt to sell the Plaintiff solar panels. It did so twice before the Plaintiff even called back the number.

62. Plaintiff never consented to receive calls from Defendant.

63. Plaintiff never did business with the Defendant.

64. Based on the foregoing, it is evident that Defendant mass-dial calls indiscriminately, including to numbers on the Do Not Call Registry.

65. Plaintiff's privacy has been violated by the above-described telemarketing calls.

66. Plaintiff never provided his consent or requested these calls.

67. The aforementioned calls to the Plaintiff were unwanted.

68. The calls were non-consensual encounters.

69. In fact, the Plaintiff requested multiple times throughout various of the calls that the calls stop, but they did not stop.

70. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines,

rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

72.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call from Defendant made from or into Florida regarding solar goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

73.    Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes as he has no interests that conflict with any of the class members.

74.    Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

14

75.    Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

76.    This Class Action Complaint seeks injunctive relief and money damages.

77.    The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

78.    Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that recorded messages were used to send the calls.

79.    The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

80.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

81.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

15

(a) Whether the Defendant used automatic equipment as defined by Florida law to send telemarketing calls;

(b) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(c) whether Defendant's conduct constitutes a violation of the TCPA or FTSA; and

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

82.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

83.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

84.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

85.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

16

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### 47 U.S.C. 227(c) on behalf of the National Do Not Call Registry Class

86.    Plaintiff incorporates the allegations in paragraphs 1-85 as if fully set forth herein.

87.    It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 U.S.C. 227(c)(2), (3), (5); 47 C.F.R. 64.1200(c)(2).

88.    Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry, as they did with the Plaintiff on at least August 9 and 12, 2024, prior to the Plaintiff ever uttering a single word or ever calling the number back.

89.    As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

17

90. If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

91. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## SECOND CAUSE OF ACTION

### Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059
### On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class

92. Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-85 as if fully set forth herein.

93. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

94. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

18

95.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

96.    Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

97.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

98.    Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

99.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendant from calling telephone numbers advertising goods or services, except for emergency purposes, using a automated means in the future;

B.    That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

C.    That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation as their actual damages for violations of the FTSA, together with fees and costs of suit; and

D.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: October 29, 2024

PLAINTIFF, individually and on behalf of all others similarly situated,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Counsel for Plaintiff and the putative Classes*

21