IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DAVID TOM, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION FILE NO. 6:24-cv-01647 |
| Plaintiff, | : : | |
| v. | : : | |
| US SOLAR QUOTES LLC D/B/A US SOLAR CONNECT, | : : : | |
| Defendant. | : : : | |

## **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

US Solar Quotes LLC d/b/a US Solar Connect's ("Defendant") motion is both procedurally improper and substantively off the mark.

## BACKGROUND

Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from

1

telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

"[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those

persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own. Tom also alleges that Defendant used automated systems to make telemarketing calls from and into Florida, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

Mr. Tom's residential telephone number is (321) XXX-XXXX. *See* Amended Complaint, ECF No. 18, at ¶ 24. That telephone number is a residential telephone line used by Mr. Tom for personal calls and for personal, family, and household use. *Id.* at ¶ 25. Mr. Tom registered his residential telephone number on the National Do Not Call Registry for more than a year prior to the calls at issue, and it has remained on the Registry since that time. *Id.* at ¶ 27.

Despite that, Mr. Tom received at least 5 automated calls from the caller ID 321-478-4284. *Id.* at ¶ 28. For the avoidance of any doubt, all the automated calls were placed using an automated system, but they did not play pre-recorded messages. *Id.* at ¶ 28. Rather, the system used dials calls *en masse*, waits for someone to answer, and only then connects the call to a human being. *Id.* It will

3

otherwise disconnect the call, including if a voicemail answers or if a human being on Defendant's end is not available for whatever reason. *Id.* This technology is known as a "predictive dialer," so named because it predicts when agents may be available and when customers may be available, and varies the automatic dialing rate to accommodate for both ends' traffic patterns. *Id.* at ¶ 29.

These calls originated using a SHAKEN/SITIR "A" attestation, indicating that the subscriber identity was verified by the telephone carrier and that the calls were not spoofed. *Id.* at ¶ 31. The Plaintiff believes and therefore avers that the subscriber of record for the 321-478-4284 number is the Defendant, or someone the Defendant hired to make calls on its behalf. *Id.* at ¶ 32. The first such call from the "A" attest 321-478-4284 number occurred on August 9, 2024, which was missed. *Id.* at ¶ 35. The second such call occurred on August 12, 2024, and started with silence. The Plaintiff said "Hello?" multiple times before the call was disconnected on the remote end after 18 seconds. *Id.* at ¶ 36. This indicates that an automated system was used to place the calls, as it would be illogical for a human to call someone, stay on the line for 18 seconds, say nothing, and then disconnect the call. *Id.* at ¶ 37. When the Plaintiff called the number back, he was connected to individuals who confirmed they were calling from the Defendant and to sell him solar panels. *Id.* at ¶ 39. During the call at 17:24, the Plaintiff first spoke to an individual named "Yvonne" who confirmed the Plaintiff's information to qualify

4

the Plaintiff for solar. *Id.* at ¶ 41, "Yvonne" then hung up on the Plaintiff when the Plaintiff requested the calls to stop and explicitly revoked any putative consent to receive further calls by stating, "Don't call me back. Just send me an email. I'm constantly busy with work. Do not call me. Do not text me." *Id.* at ¶ 42.

Determined to uncover the identity of the caller who was calling him illegally, the Plaintiff called again at 17:29. Plaintiff spoke to "Yvonne" again. *Id.* at ¶ 43. "Yvonne" then stated that the Defendant's website was solar-connect.us, this is the Defendant's website. *Id.* at ¶ 45. The Plaintiff also confirmed the Defendant's address with "Yvonne." *Id.* at ¶ 46. "Yvonne" then transferred the Plaintiff to a "Specialist," "Jacqueline" with "US Solar Connect." *Id.* at ¶ 47. "Jacqueline" then further discussed the Defendant's corporate information and license number. *Id.* at ¶ 48. "Jacqueline" also provided her direct number of 863-513-8629. *Id.* at ¶ 49. This is the direct cellular telephone number for Jacqueline Carol Phillips (nee Vines), residing at 420 Nantahala Ct Casselberry, FL 32707, a 41-year-old Female who works for the Defendant. *Id.* at ¶ 50. Thereafter, the Plaintiff received three additional calls, one on August 14, 2024, and two on August 16, 2024 from the same caller ID, and after he had requested the calls to stop. *Id.* at ¶ 51.

## **ARGUMENT**

**A.   Mr. Tom has suffered a concrete and particularized injury that he has alleged is fairly traceable to the Defendant. He therefore has standing, and any factual disputes require discovery to resolve.**

As an initial matter, the Defendant raises a Rule 12(b)(6) challenge to the Plaintiff's standing, claiming that the Plaintiff has not adequately identified the Defendant as the entity that placed the calls at issue. However, although the Defendant has brought its motion pursuant to Rule 12(b)(6), it seems to allege a lack of statutory standing, but in the same breath asserts the challenge as one against the Plaintiff's "Article III standing" on the purported basis that the Plaintiff has not adequately identified the caller. That motion is properly brought pursuant to Rule 12(b)(1), not 12(b)(6). Unlike motions to dismiss for lack of statutory standing under Rule 12(b)(6), "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). As an initial matter, the fact that the motion is brought under Rule 12(b)(6) but asserts 12(b)(1) matters provides an independent basis for denying it. *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

Regardless, the Plaintiff has plainly pled an entitlement to relief that raises his claims into the realm of factual plausibility as required by Rule 8(b).

This Court's power to hear cases, its subject matter jurisdiction, derives from Article III of the Constitution, which limits this Court to adjudicating "cases" and "controversies." U.S. CONST. art. III, § 2, cl. 1. In *Lujan v. Defenders of Wildlife*, the Supreme Court distilled the constitutional limits of Article III standing into three distinct elements: injury, traceability, and redressability. 504 U.S. 555, 560 (1992). Defendant appears to challenge only the latter two elements: traceability and redressability. Defendant takes fault with the fact that the "Plaintiff does not specifically state how he confirmed that the phone number was in fact from Defendant other than an individual confirmed they were calling from Defendant, and does not conclusively state that this number is from an 'automated pre-recorded message' and further states that the telephone number is registered to Commio." (Br. at 4–5).

It should be noted that variations of the 12(b)(1) dismissal strategy for companies who stand accused of illegal conduct have been uniformly rejected by federal courts. "While that argument has some superficial appeal, it is wrong. [Defendant's] argument is better understood as a well-disguised challenge to the legal merits of [Plainitff's] case, not as a challenge to his standing to pursue it." *Davis v. Wells Fargo*, 824 F.3d 333, 347 (3d Cir. 2016). The Defendant's allegations run contrary to what the Plaintiff pleads in the complaint, together with Plaintiff's screen shot from his phone which shows that the Plaintiff *received* the

7

calls at issue prior to calling the number back. Those allegations will continue to be proven by inspecting the Plaintiff's telephone company records in discovery. In sum, the Plaintiff was injured.

This approach of attempting to bootstrap a "we didn't do it" defense into a jurisdictional motion is one that has been uniformly rejected by federal courts in the TCPA context: "[W]hen the issue of jurisdiction is intertwined with the merits, district courts should deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56. . . This is one such case. If [plaintiff] received unwanted phone calls from [defendant], then he suffered an injury sufficient for standing purposes." *Callier v. Unified Health, LLC*, No. EP-23-CV-375-KC, 2024 WL 3418778, at *5 (W.D. Tex. July 15, 2024) (cleaned up); *see also Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 1721144, at *3 (M.D. Pa. Apr. 22, 2024) (holding 12(b)(1) challenge was inappropriate when it is "intertwined with the underlying merits that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action."); *Clough v. Highway Auto. Pros LLC*, No. SACV2300107CJCJDEX, 2023 WL 4291826, at *3 (C.D. Cal. May 23, 2023) (rejecting telemarketer's standing challenge on traceability grounds for calls allegedly placed by a third party). Indeed, as the Fourth Circuit eloquently remarked, "If a plaintiff invoking [a federal question] pleads a colorable claim arising under the . . . laws of the

United States . . . deficiencies of the claim should be addressed by the other mechanisms provided by the rules." *Holloway v. Pagan River Dockside Seafood*, 669 F.3d 448, 452-53 (4th Cir. 2012) (cleaned up).

Defendant's jurisdictional challenge must fail for the simple reason that the Plaintiff has alleged that at least two calls were placed to the Plaintiff by the Defendant, prior to the Plaintiff doing anything, and the Plaintiff received five calls that led back to the Defendant's employees as alleged in the complaint, not the other way around. The Defendant asks this Court to frustrate judicial economy by asking it to make factual determinations without a full record, without procedural safeguards, and on the basis of shoddy and internally contradictory metaphysical doubts as to the merits of the Plaintiff's case. In sum, nothing in the Constitution requires a plaintiff to plead more than the basic allegations of injury here; plaintiffs are not required to prove such allegations in their complaints, nor can defendants use Rule 12(b)(1) as a way of improperly forcing the plaintiff to do so. The Plaintiff nevertheless does so. The constitutional requirement for an injury-in-fact sounding in federal question jurisdiction is pleading federally proscribed conduct that is fairly traceable to a defendant. *Lujan*, 504 U.S. at 452–53. Pleading exact evidence at the pleadings stage cannot be a constitutional requirement for jurisdiction.

As an initial matter, the Defendant misrepresents the Plaintiff's pleadings. For starters, the words "automated pre-recorded message" appear nowhere in the Plaintiff's Amended Complaint. To the contrary, the Plaintiff has alleged that the "automated calls were placed using an automated system, but they did not play pre-recorded messages." (Am. Compl. ¶ 30). Moreover, the Plaintiff was able to identify the Defendant because he received 5 automated calls from the Defendant, using an automated dialer, from the same caller ID, which all originated with SHAKEN/STIR "A" attestation, indicating the calls were not "spoofed." (Am. Compl. ¶ 29–33). Based on the fact that the Plaintiff called the number back, and reached the Defendant, the Plaintiff alleges and avers that the calls all came from the Defendant because they all came from the same Caller ID. And despite claiming not to own or have any association with the telephone number 321-478-4284, the Defendant has no explanation for how the Plaintiff was able to call that number back after the Defendant called him and reach various employees of the Defendant, including Jacqueline Phillips. (Am. Compl. ¶ 42–54). Nor does the Plaintiff claim that the Defendant is Commio, as the Defendant unjustly claims. Rather, the Plaintiff has alleged that the Defendant subscribes to Commio telephone service, either directly or through an intermediary, just as an individual subscribes to AT&T, Verizon, or T-Mobile, either directly, or through an intermediary like Boost Mobile, Tracfone, Mint Mobile, or Consumer Cellular.

Records in the possession of Commio, a third-party telephone provider, therefore, will confirm the Plaintiff's allegations and claims. But that is a matter for discovery.

The only information that the Plaintiff has access to now is his own experiences on the calls *that the Defendant placed to him*. Those experiences are more than sufficient to give rise to the inference that the Defendant placed the illegal calls at issue. This is because the Plaintiff received 5 calls from the same telephone number, called that number back, spoke to multiple individuals who stated that they were with the Defendant, and was eventually transferred to a person, Jacqueline Phillips, who is indisputably an employee of the Defendant. Defendant's counterargument, that it has nothing to do with the phone number at issue, is belied by the fact of this investigation. It defies logic to make the statement "the number proffered by Plaintiff is not registered to Defendant, nor has Plaintiff provided any evidence to support if this number belongs to Defendant" (Br. at 5), when calling that number allows one to speak with employees of the Defendant.

Finally, the Defendant's consent argument can easily be dispatched with. As an initial matter, the Defendant called the Plaintiff at least twice before the Plaintiff even called the number back or even uttered a single word. That action is sufficient to trigger injury under the TCPA and is insufficient to constitute consent under the

11

TCPA in any event, as the Eleventh Circuit Court of Appeals has held. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) ("The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing."). And because he received two calls prior to calling the Defendant, the Defendant indisputably had no consent to contact the Plaintiff. Moreover, under the TCPA, consent is an *affirmative defense* for which the party seeking to apply it must prove at trial. *See Mais v. Gulf Coast Collection Bureau, Inc.,* 944 F. Supp. 2d 1226, 1247 (S.D. Fl. 2013) ("Under the TCPA, consent is an affirmative defense.") The Plaintiff is not required to provide evidence, let alone at the pleadings stage, disproving any proffered consent.

As a result, at this stage it is plausible, if not necessary, to infer that Defendant itself called Plaintiff, and that as a result, Plaintiff was injured because he *received* illegal calls from the Defendant. And similarly, because factual disputes exist, this matter should unquestionably proceed to discovery. The Plaintiff has pled that he suffered a legally cognizable injury in receiving a call to his phone on the Do Not Call Registry without consent. In sum, the Plaintiff has alleged sufficient facts which give rise to the inference that the Defendant, or someone acting on the Defendant's behalf, placed the calls at issue to Mr. Tom, not the least of which because, when Mr. Tom called the number that the Defendant

denies owning back, Mr. Tom was connected to the Defendant's employees. That's enough to entitle the Plaintiff to discovery on the issue of who owns the telephone number and who made the calls at issue. If anything, the Defendant's own contrary allegations demonstrate, at best, a factual dispute that will require discovery to sort out.

    **B.    Mr. Tom has pled sufficient facts giving rise to a claim for relief under each of the two causes of action he alleges.**

Defendant also contends that the case should be dismissed because the Plaintiff fails to allege facts in the causes of action pled. This argument may easily be dispatched with by referencing the statutory hook for each of his two causes of action and the facts that the Plaintiff pleads to support each. As for the first cause of action, violating the TCPA's prohibition against calling numbers on the Do Not Call Registry, the Plaintiff must plead that (1) the defendant called a residential telephone number; (2) registered on the National Do Not Call Registry; (3) at least twice in any 12-month period; (4) for initiating any telephone solicitation. 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5).

Plaintiff's Amended Complaint pleads each element of this first claim:

(1) Defendant called Plaintiff's residential telephone number, Am. Compl. ¶ 25–28;

(2) registered on the National Do Not Call Registry, *id*. ¶ 28;

(3) at least twice in any 12-month period, *id*. ¶ 29, 60;

13

(4) for the purpose of initiating any telephone solicitation, *id.* ¶ 45, 48–54, 61.

Similarly, as to the second cause of action, calling a number in violation of the FTSA, the Plaintiff must plead that (1) the Defendant either called a Florida number or made a call from Florida; (2) with a "telephonic sales call;" (3a) involving an automated system for the selection and dialing of telephone numbers, or (3b) involving an automated system for the playing of a recorded message when a connection is completed to a number called, (4) without the prior express written consent of the called party. Fla. Stat. § 501.059(8)(a).

Plaintiff's Amended Complaint pleads each element of this second claim:

(1) Defendant called a Florida number, Am. Compl. ¶ 24;

(2) with a "telephonic sales call," *id.* ¶ 45, 48–54, 61;

   a. Pursuant to Fla. Stat. § 501.059(1)(i), a "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." As the allegations make clear, the telephone calls were made for the purpose of soliciting the sale of residential solar panels.

(3) involving "an automated system for the selection and dialing of telephone numbers," *id.* ¶ 30–36;

  (4) without the "prior express written consent of the called party," *id.* ¶ 23, 46, 60, 62, 66, 96.

Defendant's other purported issues and deficiencies with the Plaintiff's pleadings fare no better.

For example, the Defendant takes issue with the fact that the Plaintiff has been unable to allege the brand name of the automated system Defendant used to place the calls as purported support for the proposition that the Plaintiff has not pled a cause of action under the FTSA. But as multiple courts have realized in the TCPA context, "While a TCPA plaintiff should not be expected to plead details regarding the technical functionality of the alleged ATDS, the complaint must include at least some facts to support the conclusion that an ATDS was used. For example, a plaintiff could describe the promotional content or the generic, impersonal nature of the text message allegedly sent using an ATDS. A plaintiff might also allege that identical messages were sent to many potential customers at the same time." *Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016). The Plaintiff here does so, pointing, for instance, to the technology used as a "predictive dialer" as well as other "indicia that it automatically selected and dialed telephone numbers," including because it did not connect the call to a human agent in most instances because of improper programming. (Am. Compl. ¶ 30, 31, 32, 36, 40). Florida courts, including this one, have held that these pleadings are

sufficient to state a claim under the FTSA. *See, e.g.*, *Taylor v. Suntuity Solar Ltd. Liab. Co.*, No. 8:23-CV-00694-MSS-AEP, 2024 WL 964199, at *1 (M.D. Fla. Mar. 6, 2024) (denying motion to dismiss and crediting the allegation that "Plaintiff noticed a delay between the moment she answered the phone and the moment the call center employee began speaking during each of the calls she received from Defendant," which was attributed to "the Ytel dialer connecting Plaintiff to a live call center employee only after she answered the phone and began speaking").

Nor did the Plaintiff improperly redact his phone number. *See e.g. Isgett v. Northstar Location Servs., LLC*, No. 4:14-CV-4810 (RBH), 2015 U.S. Dist. LEXIS 89252, 2015 WL 4072094, at *3 (D.S.C. July 2, 2015) (finding that plaintiff stated a plausible claim sufficient to survive a motion to dismiss where plaintiff did not provide the telephone number for the subject line at issue); *Hashw v. Dep't Stores Nat. Bank*, 986 F. Supp. 2d 1058, 1061 (D. Minn. 2013) ("Here, [plaintiff] has pleaded that an ATDS was used to make the calls to his cellular phone... nothing more is required to state a claim for relief under the TCPA."); *Ott v. Mortg. Inv'rs Corp. of Ohio*, 65 F. Supp. 3d 1046, 1060 (D. Or. 2014) ("[I]f there is a question about the phone number at issue, it can be addressed through discovery."). The Plaintiff's full telephone number was redacted pursuant to Rule 5.2(a) and (e)(1), as full disclosure of the Plaintiff's telephone number would

constitute an unwarranted invasion into the Plaintiff's personal privacy interests in this litigation alleging receipt of unlawful calls to that number. The remainder of the Defendant's issues with the Plaintiff's pleadings all point to disputed factual issues which must be addressed in discovery.

As a result, the Defendant can plead to no issue with the Plaintiff's well pled factual allegations. They do not at all rise to the level of justifying why the Plaintiff has failed to state a claim, let alone justify why this case should be dismissed at the pleadings stage.

Dated: November 29, 2024          Respectfully submitted,

/s/ Avi R. Kaufman
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Counsel for Plaintiff and the putative Classes*